# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

FAIZAL BHIMANI and
OM SRI SAI, INC.,

    Defendants.

NO. 3:17-CR-0324

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is a Motion to Suppress a statement given by Faizal Bhimani ("Defendant Bhimani") which is alleged to have been given in violation of his Fifth Amendment rights. (Doc. 41). In particular, Defendant Bhimani alleges the *Miranda* warning was insufficient and the waiver was not knowing and intelligent. An evidentiary hearing was held on the Motion on November 27, 2018. I have taken under advisement the memoranda filed in connection with the Motion to the Suppress and the exhibits and testimony offered at the November 27, 2018 hearing. After consideration of these submissions and the applicable law, for the reasons provided herein, Defendant Bhimani's Motion is denied.

## I. Background

On October 24, 2017, a federal grand jury returned a four-count Indictment charging Defendants Bhimani and Om Sri Sai, Inc. with sex trafficking, drug trafficking, and managing a drug premises. Specifically, Count One charges Defendants with Sex Trafficking by Force and Coercion in violation of 18 U.S.C. §§ 2; 1591(a)(1), (a)(2), and (b)(1), Count Two charges Defendants with Sex Trafficking by Force and Coercion Conspiracy in violation of 18 U.S.C. § 1594(c), Count Three charges Defendants with Drug Trafficking Conspiracy in violation of 21 U.S.C. § 846, and Count Four charges Defendants with Managing a Drug Premises in violation of 21

U.S.C. § 856(a)(2). (Doc. 1).

Defendant Bhimani was arrested pursuant to a warrant on October 25, 2017 by law enforcement officers at the Howard Johnson Hotel in Bartonsville, Pennsylvania. He was taken to the Stroud Area Police Department Headquarters where he was videotaped and was read the following:

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.
> Anything you say can be used against you in court.
> You have a right to talk to a lawyer for advice before we ask you any questions.
> You have a right to have a lawyer with you during the questioning.
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
> If you decide to answer any questions now without a lawyer present you have the right to stop at any time.[1]
> Okay, so that means when you want to stop, it's over.[2]

(Doc. 47, Ex. 1). Defendant Bhimani was asked if he consented and whether he could read and write English and he responded affirmatively on both questions. He thereafter signed the following statement entitled "CONSENT[,]" which stating "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Doc. 47, Ex. 2).

On March 26, 2018, Defendant Bhimani filed the instant Motion to Suppress both the statements made in his videotaped interrogation and Facebook records obtained in violation of the Fourth and Fifth Amendments. On July 2, 2018, the Government filed a brief in response to Defendant Bhimani's Motion to Suppress. (Doc. 47). At the November 27, 2018 hearing, Defendant Bhimani withdrew the portion of his Motion requesting suppression of the Facebook records.

---

[1] Although the last sentence on the form used by Task Force Officer ("TFO") Patton said "[i]f you decide to answer questions now without a lawyer present, you have the right to stop answering at any time[,]" TFO Patton omitted the word "answering" when giving the Defendant the warning.

[2] This line is not listed on the form.

2

## II. Discussion

The Fifth Amendment to the United States Constitution contains an individual privilege against self-incrimination, and *Miranda v. Arizona*, 385 U.S. 436, 86 S. Ct. 1602 (1966), provides a mechanism to safeguard that privilege. 385 U.S. at 467, 86 S. Ct. at 1624 ("In order . . . to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored."). Before interrogation, the accused must be fully informed of the "State's intention to use his statements to secure a conviction," *Moran v. Burbine*, 475 U.S. 412, 420, 106 S. Ct. 1135, 1140 (1986), and of his rights to remain silent and to have counsel present if he so desires. *Miranda*, 385 U.S. at 469, 86 S. Ct. at 1625. An accused may waive his or her rights verbally or in writing, so long as he or she makes "a deliberate choice to relinquish the protection those rights afford." *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012) (quoting *Burghuis v. Thompkins*, 560 U.S. 370, 385, 130 S. Ct. 2250, 2262 (2010)).

When the issue of waiver arises on a motion to suppress evidence, the prosecution bears the burden of showing a knowing and intelligent waiver of Fifth Amendment rights. *United States v. Crook*, 502 F.2d 1378, 1381 (3d Cir. 1974). A court will first inquire whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice," and whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421, 106 S. Ct. at 1141. "The ultimate question in the voluntariness calculus is 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'" *Fahy v. Horn*, 516 F.3d 169, 194 (3d Cir. 2008) (quoting *Miller v. Fenton*, 474 U.S. 104, 112, 104 S. Ct. 445, 450-51 (1985)).

Defendant Bhimani raises the following arguments in support of the Motion: (1)

he did not waive his *Miranda* rights; (2) his request for a lawyer was ignored; and (3) prior to questioning, the officers did not ask him if he had a lawyer.

### A. Waiver of *Miranda* Rights

Defendant Bhimani argues he did not waive his *Miranda* rights because the warning was insufficient, he was confused, and his will was overborne by confusion. In support of his argument, Defendant Bhimani highlighted TFO Patton's description of the *Miranda* Warning and Consent as a "formality" and "not a big deal," that he asked TFO Patton if the signing of the consent was "preliminary" to which the agent responded it was, the officers' friendly rapport.

Defendant Bhimani analogizes the *Miranda* warning given to him to that in *U.S. v. Wysinger*; however, the facts of *Wysinger* differ substantially. 683 U.S. 784 (7th Cir. 2012). In Wysinger, the agent read the defendant his *Miranda* rights from a card, began scratching his neck "[a]bout half way through the reading[,]" and when he got to "[i]f you can't afford a lawyer, one will be appointed to you before we ask any questions. Do you understand . . .[,]" slammed the table "loudly," claiming he "felt something crawling on his neck." *Id.* at 789. Wysinger responded saying, among other things, "that he understood his rights." *Id.* The Seventh Circuit found this warning inadequate and misleading because it was inappropriately worded and the officers tried to use tactics to confuse Wysinger at the beginning of the interrogation. *Id.* at 803 ("Because the warning Agent Rehg gave applied only to "questioning," because it erroneously suggested that Wysinger had to choose between having a lawyer present before questioning, and because the agents used various tactics to confuse Wysinger . . . and divert him from exercising his rights, we agree that the warning was inadequate and misleading.").

While I understand Defendant Bhimani's attempt to portray TFO Patton's delivery of the *Miranda* Warning and Consent in the instant case as an attempt to minimize its importance, this is, in my view, inaccurate. Defendant Bhimani had already agreed to be questioned, so the written warning and consent were indeed a

4

formality in the sense the document formalized what had already transpired. Concerning Defendant Bhimani's question about the consent form being preliminary, TFO Patton testified it was indeed preliminary to beginning the questioning. (Doc. 47, Ex. 1). No other understanding was advanced. Therefore any suggestion that this somehow misled Defendant Bhimani into believing the questioning was insignificant or did not otherwise matter is not sound, given the warning delivered minutes before the signing of the consent.

Defendant Bhimani additionally asserts he did not realize the seriousness of the charges, the officers' conduct diverted his attention away from the seriousness of the charges, and all this confused him to the point where he had no will to resist being questioned. While it is true the agents did not advise Defendant Bhimani of the charges against him, they were obvious from the subjects that were covered in the questioning, namely, sex trafficking, drug trafficking, and maintaining a drug premises. I am satisfied Defendant Bhimani could conclude from the subjects that this was serious. Moreover, there is no requirement that a warning regarding Fifth Amendment rights include notice of the charges. *Cf. Colorado v. Spring*, 479 U.S. 564, 577, 107 S.Ct. 851, 859 (1987) ("[W]e hold that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."); *Moran v. Burbine* 475 U.S. 412, 422, 106 S. Ct. 1135, 1141 (1986) (discussing how a valid waiver does not require the individual be informed of all information that "might . . . affec[t] his decision to confess").

Any question that Defendant Bhimani did not understand his rights to a lawyer, not to answer questions, and to be able to terminate the questioning are dispelled by the reading of his rights to him by TFO Patton, his ability to read the warning, the reading of the Consent (wavier) to him by TFO Patton his ability to read it before signing it, and the signing of the Consent (waiver). Taking into account the "strong proof of the validity" of Defendant Bhimani's express written waiver under the totality

5

of the circumstances provided above, I find Defendant Bhimani knowingly, voluntarily, and intelligently waived his *Miranda* rights, which were properly advised in the warning. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755 (1979); *see also Alston v. Redman*, 34 F.3d 1237, 1253 (3d Cir. 1994) (acknowledging defendant's signed waiver form as evidence of that waiver of his *Miranda* rights was voluntary, intelligent, and knowing"); *Collins v. Brierly*, 492 F.2d 735, 739 (3d Cir. 1974) (explaining "[a waiver form's] main purpose is evidentiary, to establish with a minimum of difficulty and a maximum of certainty that the police gave the warnings and that the suspect had agreed—preliminarily—to answer questions") .

### B. Request for Lawyer Ignored

Defendant Bhimani argues that at the conclusion of questioning when he was told he was going to an arraignment, he asked about a lawyer. He was told he would be appointed a lawyer at the arraignment. While it is not totally clear what Defendant Bhimani saw as significant in this exchange, it was not a statement that he no longer wanted to continue the questioning with or without a lawyer. *See Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355 (1994) (requiring that a suspect in custody must "unambiguously assert counsel" when invoking the right to counsel and "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."). TFO Patton and TFO Shelley testified that at this point in the video, they were preparing to bring Defendant Bhimani before the Magistrate Judge, they asked him if he had a lawyer, Defendant Bhimani asked about a lawyer, and they responded that one would be appointed prior to the arraignment. In my view, there was no request for a lawyer in connection with the questioning because the questioning appeared to be over, and the subject arose in connection with the arraignment and the need for a lawyer at the arraignment. Accordingly, Defendant Bhimani did not invoke the right to counsel at the end of the interrogation video.

### C. Failure to Ask About Lawyer

Whether the officers asked Defendant Bhimani at the beginning of the interrogation if he had private counsel is legally insignificant to his suppression argument, as *Miranda* does not require such affirmative steps by law enforcement to ensure compliance. *Miranda*, 384 U.S. 436, at 467 (1966), 86 S.Ct. 1602, At 1625.

### III. Conclusion

For the above stated reasons, Defendant Bhimani's Motion to Suppress is denied. An appropriate order follows.

| | |
|---|---|
| November 29, 2018<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |