**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:17-324** |
| **FAIZAL BHIMANI, OM SRI, INC.,** | : | **(JUDGE MANNION)** |
| **NAZIM HASSAM, and POCONO** | | |
| **PLAZA INN f/k/a QUALITY INN,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Following a jury verdict finding defendants guilty on all five counts of the Second Superseding Indictment, Nazim Hassam, Om Sri Sai, Inc., and Pocono Plaza Inn, Inc., (collectively "defendants"), filed a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. (Doc. 189). The defendants essentially contend that they are entitled to a judgment of acquittal since the government failed to present sufficient evidence at trial from which a reasonable juror could conclude beyond a reasonable doubt that they were guilty of all counts in which they were charged. Alternatively, defendants assert that they are entitled to a new trial since their constitutional rights to due process and confrontation were violated based, in part, on Bruton v. U.S., 319 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36, 50, 124 S.Ct. 1354 (2004), due to "the

prejudicial spillover of overwhelming and inflammatory evidence against non-testifying Co-Defendant Faizal Bhimani."

For the reasons set forth below, defendants' motion, **(Doc. 189)**, will be **DENIED IN ITS ENTIRETY**.


I.      **BACKGROUND**[1]

On July 21, 2020, the Second Superseding Indictment, ("SSI"), was filed against Bhimani, Om Sri Sai, Hassam, and Pocono Plaza Inn, f/k/a Quality Inn. (Doc. 113). In Count 1, Bhimani and Om Sri Sai, Inc., were charged with sex trafficking by force and coercion, in violation of 18 U.S.C. §1591, and in Count 2, they were charged with sex trafficking conspiracy, in violation of 18 U.S.C. §1594(c). In Count 3, Bhimani, Hassam, and Om Sri Sai were charged with drug trafficking conspiracy, in violation of 21 U.S.C. §846, and in Count 4, they were charged with managing a drug premises,

---

[1]Since the court stated the complete background of this case in its February 13, 2020 Memorandum, (Doc. 104), in its Memorandum denying co-defendant Faizal Bhimani's motion to suppress evidence, (Doc. 57), and in its October 2, 2020 Memorandum partially granting the government's motion *in limine* to admit the video recorded post-arrest statement and admissions of co-defendant Bhimani, (Doc. 148), it will not be fully repeated herein. *See also* U.S. v. Bhimani, 492 F.Supp.3d 376 (M.D. Pa. 2020).

namely, the Howard Johnson Motel in Bartonsville, Pennsylvania, in violation of 21 U.S.C. §856(a)(2). Finally, in Count 5, Hassam, Bhimani, and Pocono Plaza Inn were charged with managing a drug premises, namely, the Pocono Plaza Inn, f/k/a Quality Inn, in violation of 21 U.S.C. §856(a)(2). The charges arose, in part, from allegations that Bhimani allowed and assisted his co-defendants in renting, leasing, and making available the Howard Johnson Motel for the purposes of sex trafficking, and storing, distributing, and using controlled substances, including cocaine, cocaine base, heroin, and marijuana, in Stroudsburg, Monroe County, Pennsylvania.

The defendants' joint trial commenced on October 5, 2020, and on October 23, 2020, the jury rendered a verdict of guilty on all counts that were charged against the four defendants. After the verdict, evidence was presented at a post-trial hearing regarding the forfeiture allegations in the SSI with respect to the properties owned by the corporate defendants. The jury found that several specific pieces of properties associated with Om Sri Sai[2], including the Howard Johnson Motel and Pocono Plaza Inn, were

---

[2]Om Sri Sai, Inc. is the corporate owner of a Howard Johnson Motel in Bartonsville, PA. Bhimani was employed by Om Sri Sai. Hassam was a shareholder in Om Sri Sai and owned 49% of its share. Thus, he was not the largest shareholder and he was not the sole owner of Om Sri Sai.

forfeited to the government pursuant to 18 U.S.C. §1594(d), and 21 U.S.C. §853.

On November 20, 2020, defendants Hassam, Om Sri Sai, and Pocono Plaza Inn filed their motion for judgment of acquittal, or, in the alternative, for a new trial. (Doc. 189). Originally, Hassam moved for judgment of acquittal on Counts 3 and 5, Om Sri Sai moved for judgment of acquittal on Counts 1 through 4, and Pocono Plaza Inn moved for judgment of acquittal on Count 5. In their alternate motion for a new trial, defendants requested that the guilty verdicts against all of them be vacated and a new trial be granted as to all counts against them.

In their reply brief, defendants note that although they did not seek judgment of acquittal on Count 4 with respect to Hassam, they seek the court to consider whether Hassam and Om Sri Sai are entitled to a new trial on Count 4. Regardless, as discussed below, neither Hassam nor Om Sri Sai are entitled to a new trial on Count 4. Defendants also withdrew their Rule 29 motion with respect to Count 5 claiming that "this argument is more properly asserted as ground for a new trial under Rule 33."[3]

---

[3]Despite defendants attempt to modify their motion in their reply brief, which prevents the government from responding to their proposed revisions, as discussed below, neither Hassam nor Om Sri Sai are entitled to a new

Defendants' motion has been fully briefed and is ripe for the court's decision. (Docs. 190, 192 & 193).[4]

## II.    STANDARDS

### A. Rule 29 Motion for Judgment of Acquittal

"On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial." United Sates v. Delgado, 367 F. Supp. 3d 286, 291 (M.D. Pa. 2019), aff'd 827 Fed.Appx. 180 (3d Cir. 2020), (citing United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); United States v. Freeman, 763 F.3d 322, 343 (3d Cir. 2014)). Further, "[t]he court must view the evidence in a light most favorable to the prosecution and must deny the motion 'if there is substantial

---

trial on Count 4, and neither Hassam nor Pocono Plaza Inn are entitled to a new trial with respect to Count 5. The verdict with respect to Counts 4 and 5 is not contrary to the weight of the evidence, rather it was supported by an abundance of evidence regarding both Counts as against the stated defendants.

[4]The transcripts from the trial have been filed and are part of the record which the court considers in this matter. (Docs. 196-204).

evidence ... to uphold the jury's decision.'" *Id*. (citing Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)). The court is required to "draw all reasonable inferences in favor of the jury's verdict", and, "a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" United States v. Smith, 294 F.3d 473, 476–77 (3d Cir. 2002) (internal citations omitted). Thus, the court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." United States v. Fattah, 914 F.3d 112, 183 (3d Cir. 2019) (citation omitted).

"Under this highly deferential standard of review, it is not the court's task to 'act as the thirteenth juror,' weigh credibility, assign weight to evidence, or 'substitute [its] judgment for that of the jury.'" Delgado, 367 F.Supp.3d at 291 (citations omitted). "The decision to overturn a conviction based on insufficient evidence may only be made 'where the prosecution's failure is clear,' United States v. Leon, 739 F.2d 885, 890 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)), or where the verdict 'fall[s] below the threshold of bare rationality,' Caraballo-Rodriguez, 726 F.3d at 431." *Id*. "Reversing the jury's conclusion

simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges." United States v. Garner, 915 F.3d 167, 169 (3d Cir. 2019) (citation omitted).

### B. Rule 33 Motion for a New Trial

Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "Granting or denying a motion for a new trial 'lies within the discretion of the district court.'" Delgado, 367 F.Supp.3d at 291 (citing United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006)). "A court evaluating a Rule 33 motion does not view the evidence favorably to the government but instead must 'exercise[ ] its own judgment in assessing the Government's case.'" Id. (citing United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)). "[E]ven if the court believes that the verdict is contrary to the weight of the evidence it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred— that is, that an innocent person has been convicted.'" United States v. Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (citation omitted). Further, "Rule 33 motions are disfavored and should be 'granted sparingly and only in exceptional cases.'" Delgado, 367 F.Supp.3d

at 291 (citations omitted). "Exceptional cases include those in which trial errors 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *Id*. (citing United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)).

### III.   DISCUSSION

#### A. Motion for Judgment of Acquittal

First, defendants challenge the sufficiency of the evidence regarding the drug trafficking conspiracy charge against Hassam, i.e., they contend that there was insufficient evidence that Hassam was a co-conspirator in the drug trafficking conspiracy charged in Count 3 of the SSI. The government counters that its evidence and witnesses provided more than sufficient evidence from which a reasonable juror could conclude beyond a reasonable doubt that Hassam conspired to traffic drugs at the Howard Johnson and Pocono Plaza.

The time period of the conspiracy alleged in Count 3 of the SSI, (Doc. 113), was from 2011 to July 2019. No doubt that there was ample evidence produced at trial by the government to show that Hassam was well aware of drug usage and drug sales and distribution that was occurring at the Howard

- 8 -

Johnson and Pocono Plaza during the relevant time. Despite the lengthy summary of the trial testimony detailed in defendants' brief, (Doc. 190 at 8-13), to try and show Hassam's lack of knowledge regarding the rampant drug use and wide-spread continuous sale of drugs out of the Howard Johnson and Pocono Plaza motels, as discussed below, there were also plenty of witnesses who implicated Hassam as a co-conspirator to distribute drugs at both of the motels and to show that Hassam conspired with drug dealers to allow them to engage in and to facilitate their illegal drug sales at the Howard Johnson and Pocono Plaza. It was up to the jury to decide which testimony deserved more weight and credibility, and it is clear that the jury found, beyond a reasonable doubt, that Hassam was a participant in the drug trafficking conspiracy to sell and distribute illegal drugs at both motels as charged in Count 3.

Defendants argue that the evidence presented at trial by the government failed to prove beyond a reasonable doubt each and every element required for a drug trafficking conspiracy conviction, and particularly that there was no testimony of any government witness that showed the existence of a meeting of the minds and agreement between Hassam and another natural person to facilitate drug trafficking at the motels.

Specifically, Count 3 of the SSI, (Doc. 113), charged that from in or about 2011, and continuing to July 9, 2019, in the Middle District of Pennsylvania, the defendants, Faizal Bhimani, Nazim Hassam, and Om Sri Sai, knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown, to commit the following offense(s) against the United States: To distribute and possess with intent to distribute cocaine and cocaine base, Schedule II controlled substances, and heroin and marijuana, Schedule I controlled substances, which is a violation of federal law.

As the court instructed the jury in its charge, (Doc. 207 at 87-88),[5] in order for you to find a defendant guilty of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21

---

[5]The court's complete jury instructions was filed of record in this case and thus will not be fully repeated since it is incorporated in its entirety herein by reference. (Doc. 207). The court notes, however, that its instructions regarding the conspiracy charges was extensive and very detailed, and followed the Third Circuit Model Jury Instructions. The court's instructions were also vetted by all counsel of record before the court gave them to the jury and revisions proposed by counsel were made during the charge conference. Further, it is well-settled that the jury is presumed to follow all of the court's instructions. *See* Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions ....").

U.S.C. §846, you must find that the government proved beyond a reasonable doubt each of the following three (3) elements:

**First**: That two or more persons agreed to distribute or possess with the intent to distribute cocaine, cocaine base, heroin or marijuana. I will explain the elements of this offense to you shortly. I instruct you as a matter of law that cocaine, cocaine base, heroin and marijuana are controlled substances within the meaning of the federal drug laws.

**Second:** That the defendant was a party to or member of that agreement; and

**Third:** That the defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute controlled substances, and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The court finds that there was more than ample evidence from which a reasonable juror could conclude that Hassam agreed with at least one other person to distribute controlled substances. In fact, a reasonable juror could conclude that Hassam and Bhimani had a meeting of the minds prior

to Bhimani's arrest in 2017. No doubt that both defendants wanted to have as many rooms at the motels occupied which financially benefited the motels as well as both men personally, and there was evidence that both defendants agreed to place the guests who were selling drugs in the rear hallway of the Howard Johnson away from the other guests. Although defendants offered evidence that certain guests were placed in the rooms in the rear hallway of the motel since they required smoking rooms which were located in that area, it appears that the jury found the government's evidence more credible which showed that these rooms were reserved for the guests who were selling drugs and sex to keep them separated from the other guests and out of sight.

As detailed by the government, (Doc. 192 at 7-8), in its brief:

The evidence at trial established that the Howard Johnson Hotel, owned and operated by Om Sri Sai, allowed drug traffickers and sex traffickers, most of whom distributed drugs to their victims and often to others, to stay and work in the hotel, and benefitted financially from that arrangement. The Howard Johnson staff, including General Manager Bhimani and others, invariably placed these individuals in the back hallway. That location was desirable because both criminal actors and their customers could come to the back parking lot, out of view of the highway, and enter through a back door, avoiding the main lobby. Testimony and text messages confirmed that Bhimani was not the only employee to enforce this policy. *See, e.g.*, Oct. 9 Tr. at 83:19-97:5; Ex. 85.8. After Bhimani's arrest and detention in 2017, Nazim Hassam took over the day to day operations of the hotel. Under his management, drug traffickers continued to be placed in the back hallway. This is circumstantial evidence that Hassam was part of the conspiracy all along; that he knew what was happening in his hotel, allowed it to

continue for his and his business's profit, and agreed to continue the practice when he took over.

Moreover, several employees advised Hassam of the regular drug activities occurring at the Howard Johnson, yet Hassam continued to turn a blind eye to it and essentially told the employees that these people staying in the motel were paying customers, the motel needed the money, and that what customers did in their rooms was their business. Hassam was also well aware that a special rear wing of the motel, i.e., the back hallway, was reserved for customers trafficking sex and drugs out of the motel, that other customers would not be given rooms in that part of the motel, and that these customers trafficking sex and drugs often would pay cash for extended stays at the motel and receive special rates.

In particular, Isis Rosales testified that she told Hassam about an employee using drugs, about smelling marijuana in the hotel, and about other people complaining to her about the smell of drugs. (Doc. 199, Oct. 9 Tr. at 117:12-118:15). William Ortiz, a convicted drug dealer, told Hassam that two of his employees were drug addicts, and Hassam did nothing. (Id. at 42:16-4). Further, Hassam encourage Ortiz not to testify against him and then told others Ortiz was going to testify. (Id. at 41:23-42:15). Although Kerri Labar told Hassam she and her boyfriend, Jeremy Baboolal, were drug

addicts, he allowed them to work at the hotel to satisfy the debt for the money Labar stole from him and he gave them a room in the back hallway.

Another drug dealer that Hassam allowed to stay in the back hallway at the Howard Johnson was Robert Scott, a/k/a "Wells." On February 22, 2019, Scott left the Howard Johnson, drove across the street, and sold crack cocaine and cocaine to a confidential informant. (Doc. 201, Oct. 20 Tr. at 171:2-173:7). TFO Chris Shelly and other officers arrested Scott on February 26, 2019, and searched his room at the Howard Johnson, room 161, and his vehicles. Officers seized significant quantities of several different types of controlled substances. (Id. at 173:8-77:3). Several witnesses testified that Scott sold drugs in the Howard Johnson out of his room and in the hallway, as well as the parking lot. Further several employees at Howard Johnson were aware of Scott's illegal drug activities, including Labar, Baboolal, Maria Macedo, and Krunal Patel, a manager hired by Hassam. (Doc. 200, Oct. 19 Tr. at 196:21-199:2; Doc. 199, Oct 9 Tr. at 136:17-138:24). While defendants contend that the government's theory Hassam must have participated in a drug distribution conspiracy with Robert Scott because the stated motel employees knew or suspected Scott was selling drugs during his stays at the motel is undercut by lack of evidence

- 14 -

that these employees ever informed Hassam of their suspicion or their personal knowledge of Scott's drug activities, or that they only advised Hassam that drugs were being used in certain rooms and could smell drugs, they completely ignore other evidence, including evidence which showed that Hassam himself collected cash directly from Scott at his room in the back of the motel that was "out of the system." Other employees at Howard Johnson expressed their concerns directly to Hassam about employees who worked at Howard Johnson and Park Plaza Inn and were on drugs, including employees who also lived at the motels. (*See* Doc. 199, Oct. 9 Tr. at 117-119; 138; Doc. 200, Oct. 19 Tr. at 178-183 (Van Horn) and (Labar)). Labar also testified that a drug dealer named "Dilly" would sell cocaine to Jennifer Bush at the Pocono Plaza during the time Labar worked there, 2015 to 2018. Labar also stated that guests would complain at the Pocono Plaza about finding drug paraphernalia, such as needles and baggies used for drugs, in the rooms and around the property, and she discussed this with Janet Bush. Further, Howard Johnson records, submitted as government's Ex. 107, show that Scott's room was registered in his girlfriend's name, Justine, that the motel reported over $15,000 in room rental fees paid over a stay lasting longer than a 6-month period, and that there was a period of time when

Scott's room at the Howard Johnson was taken "off the books" or "out of the system", or staying in an "out-of-service room." (Doc. 199, Oct. 9 Tr. at 101 (Jewett testimony); 118-119 (Rosales testimony)). Moreover, Hassam himself acknowledged that he charged Scott an extra $50 per day allegedly to park a trailer in the Howard Johnson parking lot. Significantly, the $50 extra fee Scott paid in cash directly to Hassam, was not reported in motel records. Thus, there was more than sufficient evidence for the jury to find that Hassam was financially benefitting, both personally and through the motels, from the arrangements with drug dealers, most notably Scott and Alphonse, and that he was aware and allowed the dealers to sell drugs out of the back hall of the Howard Johnson and the parking lot over an extended time period.

Other drug dealers also stayed in the rear wing of the Howard Johnson and sold drugs from their rooms during the time Hassam supervised the day to day operations. TFO Shelly testified that Gary Alphonse sold a mixture of heroin and fentanyl, (Gov. Ex. 71 & 71.1), to a government confidential informant on May 17, 2018, from Room 157 of the Howard Johnson, located in the back hallway. (Doc. 201, Oct. 20 Tr. at 163-170). On May 18, 2018, surveillance conducted on Alphonse revealed that he exited the back door

of the Howard Johnson and conduct two drug sales in the rear parking lot with his girlfriend. As he drove away, TFO Shelly arrested Alphonse. (Id.). A search of Alphonse, his girlfriend, and room 157 lead to the seizures of numerous bags of heroin and fentanyl, (Gov. Exs. 41 & 42). (Id.).

Additionally, Ronald McKenna testified that he was living at the Howard Johnson on and off from 2016 through 2018, and that he and his partner, Ackbar Mohammad, who would also stay at the motel, sold heroin out of the back section since they knew that they could conduct drug activity there without being bothered. Both men sold large quantities of drugs at the motel, i.e., about 3 bricks or 150 bags of heroin per day. McKenna stated that he openly sold heroin out of his room and in the hallway and in parking lot servicing about 20 to 40 drug customers per day. He also indicated that he saw other drug dealers sell drugs out of their rooms and in the hallway of the back section of the motel. He further stated that he stored the heroin in his room. This was a period of time when Bhimani and Hassam ran daily operations at Howard Johnson, and McKenna stated that Bhimani and Nazim the owner (Hassam) worked the front desk at this time. In fact, Nazim would be at the front desk at times when McKenna checked in. (Doc. 199, Oct. 9 Tr. at 70-76). McKenna also indicated that he knew the owner, Nazim,

- 17 -

by name and in addition to seeing him at the front desk, he would see Nazim in the hallways. McKenna also stated that Hassam knew his name even though he never formally met Hassam and despite the fact that he usually registered in the motel under his nephew's name or Ackbar's name.

At trial, Hassam testified and contradicted himself several times on cross examination. As the court instructed it was the jury's role to evaluate the credibility of all the witnesses who testified at trial, including a defendant like Hassam, and they were also instructed regarding testimony that was false in one, false in all. (Doc. 207 at 19, 42). A reasonable juror could have certainly concluded that Hassam's testimony was not credible, based in part on inconsistencies. In fact, based on the verdict, it appears that the jury found Hassam much less credible than the many witnesses presented by the government. If the jury found Hassam not credible, they could have also concluded he was lying about not knowing that Scott and some of the other guests were drug dealers and about the nature of their relationship. *See United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006) (holding that the court, when deciding a motion for judgment of acquittal, must "view the evidence in the light most favorable to the verdict, and must presume that

the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences.").

Thus, as the government states, (Doc. 192 at 12), "[b]ased on the uninterrupted continuation of the pattern of conduct from 2011 through at least February 2019," the evidence was more than sufficient for the jury to have found that Hassam conspired with Scott and Alphonse, and, as part of their agreement, personally placed them, as well as the other drug dealers who openly sold drugs at the motel, in the back hall, or directed his employees to do so, and allowed them to sell drugs for an extended period of time. The evidence also showed that this pattern did not change after Bhimani was arrested and went to prison in 2017, and "a reasonable jury could have inferred that Hassam was aware of it and involved all along." (Id.).[6]

---

[6]The court finds no merit to defendants' claim that Scott was "extensively interviewed," but that his interview was not videorecorded by officers. (Doc. 190 at 14-15). Defendants' assertion is not supported by the record. TFO Shelly testified that he attempted to interview Scott, but that the attempt was unsuccessful. (Doc. 201, Oct. 20 Tr. at 183). TFO Shelly testified on cross that he read Scott his <u>Miranda</u> rights on video, but that Scott requested a lawyer, so no interview took place. (Id. at 123-126). Also, defendants' attempt to rely upon any alleged testimony of Scott which they speculate would have been favorable to Hassam, is not considered since Scott did not testify and, according to the government, declined to give a statement. Further, Scott informed the government and defense counsel,

Nor can it be ignored that Hassam lived at the Howard Johnson, possessed 49% of the shares of the company that owned it, and ran it. Thus, the jury could have readily found that he certainly knew what was going on at the motel, including the open sale of drugs as well as the prostitution. "Deliberate ignorance cannot become a safe harbor for culpable conduct." United States v. Wert–Ruiz, 228 F.3d 250, 258 (3d Cir.2000). As such, there is no merit to any claim by Hassam that if he did not know a drug trafficking conspiracy existed, he could not agree to have joined it. In Wert-Ruiz, 228 F.3d at 255 n. 3, the Third Circuit noted that "[t]his contention flounders on our ruling to the contrary in United States v. Anderskow, 88 F.3d 245, 254 (3d Cir.1996), which affirmed a conspiracy conviction where 'the jury had ample evidence with which to conclude that, at a minimum, [the defendant] had willfully blinded himself to the fact that' a criminal conspiracy existed."

Also similar to the Wert-Ruiz case, the court gave the jury a willful blindness or deliberate ignorance instruction (Doc. 207 at 110-113). The Third Circuit in Wert-Ruiz, id. at 258, stated, "a willful blindness instruction

_____

through his counsel, that he would assert his Fifth Amendment privilege and refuse to answer questions if called to testify. Nor can defendants now rely upon any other person and any other alleged statements they may have made who was not called as a witness to testify at the trial.

served the important purpose of preventing Wert-Ruiz from evading culpability if the jury concluded that due to a willful refusal to connect the dots, Wert-Ruiz actually did not know of the purposes of her money laundering activities." (citing United States v. Sharma, 190 F.3d 220, 231 (3d Cir.1999) (approving instruction when jury could have inferred the defendant's lack of knowledge, and the willful blindness instruction "ensured that a juror who believed that a defendant turned a blind eye toward his co-defendant's conduct would not vote to acquit the willfully blind defendant")). *Id*. at 258.

Defendants' belated argument that Hassam as an individual cannot conspire with his corporate employer, namely, Om Sri Sai, was not raised by the defense at trial and this was not part of the government's theory of the conspiracy at trial. Also, as the government points out, (Doc. 192 at 16-17), defendants' reliance on Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 767, 104 S.Ct. 2731 (1984), (Doc. 190 at 18, n. 4), in which the Supreme Court held that a corporation was incapable of conspiring with its wholly-owned subsidiary to violate the Sherman Act, is misplaced since "[t]he Court neither considered nor held that employees cannot conspire with their employers", and "[t]he only discussion of employees was in the context of

whether two employees of the same corporate entity could conspire with one another in a way that violates the Sherman Act." (citing Copperweld, 467 U.S. at 769). *See also* Fogie v. THORN Americas, Inc., 190 F.3d 889, 989 (8th Cir. 1999) (Court held that "as a matter of law a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another." (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) ("the Supreme Court held that a parent and its wholly owned subsidiary lacked the capacity to conspire to violate §1 of the Sherman Act ...."). Here, the Second Superseding Indictment did not charge in Count 3 a conspiracy between a parent corporation and a wholly owned subsidiary. Rather, it charged that from 2011 through July 9, 2019, Bhimani, Hassam, and Om Sri Sai knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown, to sell controlled substances. "In any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit." Copperweld, 467 U.S. at 769, 104 S.Ct. 2731. Here there was sufficient evidence for the jury to find that Hassam and Scott and Alphonse combined to act for their mutual benefit, the drug dealers were allowed to openly sell

drugs out of the Howard Johnson over a continuous period of time and make money, and Hassam was able to rent out the rooms at the motel. There was also sufficient evidence that both Hassam and Om Sri Sai profited from this arrangement. The agreement in the charged conspiracy in Count 3 was not between Hassam and Om Sri Sai, it was between Hassam and Om Sri Sai, acting through Hassam, a large shareholder of the company, and Bhimani, the General Manager of Howard Johnson, along with the stated drug dealers who sold drugs out of the motel for an extended time period for all of their mutual benefit. Further, as the government points out, (Doc. 192 at 17), "Hassam does not 'completely own' Om Sri Sai, Inc., but only owns 49% of its shares", "[a]nd the corporation's guilt was based not only on Bhimani and Hassam's actions, but on the knowledge and actions of other employees as well." *See* United States v. Hughes Aircraft Co., 20 F.3d 974, 978-79 (9th Cir. 1994) (Holding that "[t]he statutory language [of 18 U.S.C. §371, which states that if "two or more persons conspire ... each" may be punished] does not exclude criminal liability for a corporation simply because its employees are the actual conspirators. To rule otherwise would effectively insulate all corporations from liability for conspiracies involving only employees acting on behalf of that corporation. We hold that a corporation may be liable under

- 23 -

§371 for conspiracies entered into by its agents and employees.") (citing United States v. Peters, 732 F.2d 1004, 1008 (1st Cir. 1984)).

Additionally, defendants attempt to rely upon Basroon as a defense, and essentially contend that wholly intra-corporate conduct does not create the required number of persons for the existence of a valid criminal conspiracy, and state that the Third Circuit "has not yet fully adopted the Interenterprise Conspiracy Doctrine or applied it to a criminal conspiracy." See United States v. Basroon, 38 F.App'x 772, 781 (3d Cir. 2002) ("While the intra-corporate conspiracy doctrine has been applied by some courts to civil rights complaints brought pursuant to 42 U.S.C. §1985, this court has specifically rejected the doctrine, even in the civil context." "Because th[e] [Third] Circuit does not recognize the intra-corporate conspiracy doctrine even within the civil context, it clearly does not apply in the criminal context.").

The court also instructed the jury that:

> Evidence has been admitted in this case that certain persons, who are alleged to be co-conspirators of the defendants, did or said certain things. The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy.

Therefore, you may consider as evidence against the defendant any acts done or statements made by any members of the conspiracy, during the existence of and to further the objectives of the conspiracy.

(Doc. 207 at 84-85).

Thus, there was an abundance the evidence presented in this case for a reasonable juror to have concluded that Hassam, Bhimani, and Om Sri Sai, agreed to allow the drug dealers identified at trial, and mentioned above, to stay in the rooms basically reserved for them in the back hallway of the Howard Johnson, and to provide them with a safe haven where they could readily and openly sell their illegal drugs and conduct their drug trafficking activities. *See* United States v. Schaffer, 777 F.App'x 581, 583 (3d Cir. 2019) ("The dispositive question for any claim regarding the sufficiency of the evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (citation omitted).

As such, the motion of Hassam and Om Sri Sai for judgment of acquittal on Count 3 will be denied.

Om Sri Sai seeks judgment of acquittal on Counts 1 through 4 due to insufficient evidence based on the argument that Bhimani was not acting within the scope of his employment as General Manager of the Howard

- 25 -

Johnson and as a supervisory employee of Om Sri Sai, when he performed the drug trafficking and sex trafficking criminal conduct.

With respect to corporate criminal liability, the court gave the jury Third Circuit Model Jury Instructions §7.06, (Doc. 207), and stated, in part, as follows:

> A corporation [such as Om Sri Sai] is a legal entity that may act only through individuals who are called its agents. The agents of a corporation are its officers, directors, employees, and other persons who are authorized by the corporation to act for it.
>
> The legal responsibility of a corporation, if any, is based on the conduct of its agents. In this case, the government alleges that those agents were Nazim Hassam and Faizal Bhimani, that is, an owner, employees, or managers of Om Sri Sai, Inc., Howard Johnson Hotel in Bartonsville, Pennsylvania, and the Pocono Plaza Inn, formerly known as Quality Inn, in Stroudsburg, Pennsylvania.
>
> To find Om Sri Sai, Inc., and Pocono Plaza Inn f/k/a Quality Inn guilty of the offenses charged in the indictment against them, i.e., the charges in Counts One, Two, Three and Four against Om Sri Sai, Inc., and the charge in Count Five against Pocono Plaza Inn f/k/a Quality Inn, you must find that the government proved beyond a reasonable doubt the following three (3) requirements:
>
> **First**: That each of the elements of the stated charges in the indictment was committed by an officer, director, employee, or other agent of Om Sri Sai, Inc., and Pocono Plaza Inn f/k/a Quality Inn. I have explained above in these instructions the elements of the offenses charged against these defendants in the indictment.
>
> **Second**: That each of the acts committed by an owner, managers or other employees of Om Sri Sai, Inc., Howard Johnson Hotel in Bartonsville, Pennsylvania, and the Pocono Plaza Inn, formerly known

as Quality Inn, in Stroudsburg, Pennsylvania, were within the course and scope of the employment or agency given to them by Om Sri Sai, Inc., or Pocono Plaza Inn f/k/a Quality Inn; and

**Third**: That an owner, manager, or employee committed each of these acts with the intent to benefit Om Sri Sai, Inc., or Pocono Plaza Inn f/k/a Quality Inn.

In order to find that an act was committed within the course and scope of the employment or agency given to an owner, manager, or employee, the evidence must prove that the act related directly to the general duties that the agent was expected to perform by Om Sri Sai, Inc., and Pocono Plaza Inn f/k/a Quality Inn. However, the government does not need to prove that the act was authorized by Om Sri Sai, Inc., and Pocono Plaza Inn f/k/a Quality Inn, formally or in writing.

An owner, manager, or employee was not acting within the course and scope of his or her employment if that person performed an act which Om Sri Sai, Inc., and Pocono Plaza Inn f/k/a Quality Inn, in good faith, had forbidden that person to perform. A corporate defendant is not responsible for acts which it tries to prevent. However, a corporate defendant, like an individual defendant, may not avoid criminal responsibility by meaningless or purely self-serving pronouncements.

No doubt that '[a] company may be vicariously liable for criminal conduct if the Government proves beyond a reasonable doubt that the criminal act was done by a corporate agent or employee acting within the scope of his authority and with the intent to benefit the corporation." United States v. Vastardis, 448 F.Supp.3d 391, 395 (D. De. 2020) (citing United States v. Am. Radiator & Stand. San. Corp., 433 F.2d 174, 204-05 (3d Cir. 1970)).

- 27 -

The Government presented ample evidence to support a basis to attribute criminal liability to Om Sri Sai for Bhimani's unlawful actions directly related to the duties he was expected to perform as General Manager. The record establishes that Bhimani was an agent and employee of Om Sri Sai and that he acted with the intent to benefit the corporation. Bhimani had the power to hire, fire, and promote, and thus, there was sufficient evidence to establish that he was an agent of Om Sri Sai. *See* <u>Vastardis</u>, 448 F.Supp.3d at 395. Also, as the government explains, (Doc. 192 at 20), "when Bhimani rented rooms to pimps for their victims and let them work first and then pay the hotel for the room with proceeds from commercial sex, that was directly within the scope of his duties and intended to benefit the company." Further, as summarized by the government, (Doc. 192 at 20-21),

> As part of the criminal conduct covered by Counts One through Four, the evidence showed that Bhimani and others knowingly rented rooms to drug and sex traffickers, gave discounts, hired drug dealers and users to work at the hotel, did not fire them once they learned about drug activity, allowed criminal guests to check in under assumed names, allowed guests to check in without showing identification, refrained from kicking guests out despite disruptive, criminal behavior, and allowed criminals to stay and work out of their room and pay the room rate with the proceeds. For example, evidence showed that Nanita Jewett, Donna Garippa, Maria Macedo, Krunal Patel, Kerri Labar, Isis Rosales, a cook named Butch, and Francis Joseph all knew about criminal activity occurring at the hotel. Jewett admitted to being aware of sex trafficking and telling victims to be careful, and Francis Joseph asked pimps about their girls and paid at least one victim for

sex. Jewett and Joseph continued to rent rooms to these guests, and the hotel received the financial benefit [by having its room occupied].

In short, the evidence showed that Bhimani acted within the scope of his authority as General Manager for Om Sri Sai with respect to the illicit drug trafficking and sex trafficking openly occurring at the Howard Johnson over an extended period of time. As such, based on Bhimani's responsibilities and conduct at the motel, there was more than sufficient evidence to support a rational jury's finding that he acted within the scope of his authority with Om Sri Sai.

Also, as discussed above, Hassam's conduct, as an agent of Om Sri Sai, was sufficient to find Om Sri Sai guilty on Count 4. Nor can it be ignored that Hassam lived at the Howard Johnson and worked there along with Bhimani until his arrest, and there was evidence presented that Hassam was aware of Bhimani's activities, such as "when [he] rented rooms to pimps for their victims and let them work first and then pay the hotel for the room with proceeds from commercial sex, that was directly within the scope of his duties and intended to benefit the company." (Doc. 192 at 20).

Further, the evidence established that both Bhimani and Hassam were acting with intent to benefit Om Sri Sai.

- 29 -

Thus, the court will deny defendants' motion for judgment of acquittal on Counts 1 through 4 with respect to Om Sri Sai since a rational jury could have concluded beyond a reasonable doubt that Bhimani and Hassam acted within the scope of their authority and with intent to benefit Om Sri Sai. Moreover, to the extent defendants seek to amend their motion in a footnote in their reply brief, and to change their motion from one for judgment of acquittal to one for a new trial as to Hassam's and Om Sri Sai's guilty verdicts on Count 4, based on the above discussion and the mentioned Rule 33 standard, the motion, considered as one for a new trial, will also be denied. Simply put, the court does not believe the jury's verdict is contrary to the weight of the evidence, nor does it find that there is a serious danger that a miscarriage of justice has occurred or that any innocent person has been convicted in this case.

Originally, Hassam and the Pocono Plaza Inn moved for judgment of acquittal on Count 5, claiming, in part, that the evidence did not establish that Bhimani was an agent or employee of that motel. Now, defendants seek to revise their motion to request a new trial under Rule 33 with respect to Hassam's and Pocono Plaza's guilty verdict on Count 5 based on essentially the same rational.

- 30 -

In any event, as the government notes, (Doc. 190 at 22), "[its] case against Pocono Plaza Inn and Hassam on Count Five had little to do with Faizal Bhimani." As to Bhimani, the government presented evidence to show that he would alert the drug dealers and pimps staying and operating at the Howard Johnson when police were present at this motel or in its vicinity and, that he would frequently refer them to stay at the Pocono Plaza Inn where they could continue to conduct their illegal activities to avoid detection by police until the police left the Howard Johnson's area.

Additionally, as the government, (Doc. 190 at 22-23), points out:

> Drug activity was rampant at the Pocono Plaza Inn, including that of employees themselves. Jennifer Bush sold drugs while running the bar, sometimes to Kerri Labar, with whom she would then get high before they both returned to work. *See* generally [Doc. 200] Oct 19 Tr. 217-241; 183:23-184:14. Labar testified she told manager Janet Bush on at least one occasion that she had been high during her shift the previous night and was not fired. *Id*. at 183:15-22. Local police arrested Brian Decker, a cook who lived at the hotel after a female guest died of an overdose in his room and he was caught with fentanyl the next day. [Doc. 201] Oct 20 Tr. 39:1-41:16. Multiple overdoses, drug seizures, and arrests took place at the Pocono Plaza Inn over a span of multiple years.

A reasonable jury had more than sufficient evidence to find that Pocono Plaza was knowingly made available for illegal drug sales and use and that defendants financially benefitted from this activity.

The government also contends that there was sufficient evidence to establish that Hassam knew or was willfully blind to the drug activity at the Pocono Plaza Inn, based, in part, of the following evidence:

> Jasmine Alvarez testified that she was instructed by her manager that, per Nazim, what people do in their rooms is their own business. [Doc. 200] Oct 19 Tr. at 168:19-25. Kathy Salerno [front desk clerk at Park Plaza] testified that she was instructed by manager Brad Roccanova not to call police because it was scaring away guests [regarding complaints about criminal activity]. [Doc. 201] Oct. 20 Tr. at 9:5-16. Employees testified they were told by Hassam not to call police because it was bad for business, and he did not want bad publicity. *See, e.g.*, [Doc. 200] Oct 19 Tr. at 117:22-118:5. Numerous employees testified that [Hassam] visited the Quality Inn, later the Pocono Plaza Inn, every day. Janet Bush testified that she told Hassam she had stopped renting to locals because of drug activity, but he overruled her. [Doc. 200] Oct 19 Tr. at 123:1-124:4. Bush told Hassam about online reviews of the hotel complaining of drug activity, but "he was used to it." [Doc. 200] Oct 19 Tr. at 121:18-25.

(Doc. 190 at 23-24).

Salerno also stated that there was a note at the front desk at Pocono Plaza telling staff "we were not to call the police [about guests] unless there was an absolute emergency." (Doc. 201 at 9). Also, Hassam was the direct supervisor for the managers, Roccanova and Janet Bush, at Pocono Plaza, and Hassam was seen at this motel by Salerno during her tenure. (Id. at 7-9).

During his testimony, Hassam indicated he knew that Labar was a drug user and that she stole thousands of dollars from the Pocono Plaza Inn but he did not report her to the police. Rather, Hassam gave Labar and her boyfriend a room at the Howard Johnson, where they continued to use drugs, and he gave Labar a job that involved being alone in the guest's rooms at the motel. Hassam also admitted that he knew Labar was a drug addict based on the letter he made her sign, before he allowed her to work to pay back the stolen money, in which she acknowledged she stole money from the Pocono Plaza. Notably the letter Hassam made Labar sign also repeatedly stated that Labar and her boyfriend Baboolal were drug users. Thus, when the jury heard on cross examination about the contents of the letter Hassam referenced in his direct examination, it could have reasonably concluded that Hassam's insistence that he had no idea Labar was a drug user was not credible. Hassam's credibility was also challenged when the government showed that he was not truthful to a domestic relations officer looking for Labar at the Howard Johnson regarding her failure to comply with a directive.

As mentioned, the court gave the jury Third Circuit Model Jury Instruction for false in one, false in all, (Doc. 207), and stated:

If you believe that a witness knowingly testified falsely concerning any important matter, you may distrust the witness's testimony concerning other matters. You may reject all of the testimony or you may accept such parts of the testimony that you believe are true and give it such weight as you think it deserves.

Thus, a rational jury could have found that Hassam's testimony was false in its entirety or it could have found his testimony to be less credible than other witnesses.

The government also presented testimony that Hassam directed employees not to call the police and not to refuse to rent rooms to guests who appeared to be conducting unlawful drug activity at both motels. Thus, there was an abundance of evidence for a reasonable juror to conclude that Hassam knew about the on-going drug activity at the Howard Johnson as well as at the Pocono Plaza Inn.

Accordingly, defendants' motion for judgment of acquittal will be denied in its entirety with respect to all Counts since they have failed to meet their "very heavy burden" which they bear when challenging the sufficiency of the evidence, which in this case was overwhelming, supporting the jury's verdict. *See* United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

### B. Motion for New Trial

As an alternative to their motion for judgment of acquittal , Hassam and Om Sri Sai move for a new trial with respect to Counts 3, 4, and 5, which are the controlled substance charges. Om Sri Sai does not seek a new trial on the two sex trafficking counts. Defendants' revised request also seeks a new trial for Pocono Plaza Inn on Count 5. Defendants contend that they are entitled to a new trial since they have met their burden by showing that a miscarriage of justice has occurred, or that an innocent person has been convicted.

Defendants first re-assert the *Bruton*/*Crawford* issue regarding Bhimani's post-arrest video recorded statement to police and once again contend that his statement, which the court ordered the government to redact, was improperly prejudicial and should not have been admitted at trial. The court has previously decided this issue and explained in a very detailed Memorandum dated October 2, 2020 why the redacted portions of Bhimani's statement were admissible at trial. (*See* Doc. 148). Specifically, the court allowed the government to admit at trial the video recorded post-arrest statement of Bhimani, as redacted, against the two entity defendants. The court also ruled that it would make a determination as to the portions of

Bhimani's statement that implicated Hassam in criminal activity and that were incriminating against Hassam on their face after the government's evidence was presented at the trial. (Doc. 149). The court will not rehash its rationale regarding its prior ruling with respect to Bhimani's statement and incorporates herein by reference its October 2, 2020 Memorandum, (Doc. 148).

Moreover, the *Bruton/Crawford* issue was entirely avoided by removing all statements that incriminated Hassam. The court previously ruled that Bhimani's statements were directly admissible against Om Sri Sai because he was their agent, alleviating any <u>Bruton</u> problem. Further, all statements that implicated Hassam were redacted in their entirety, and all statements that implicated Om Sri Sai were properly admitted as agent statements. In fact, there is simply no part of Bhimani's redacted video interview and statements that violated either <u>Bruton</u> or <u>Crawford</u>.

Finally, as to defendants' contention that the court should have excluded all admissions by Bhimani because they would be attributed to Om Sri Sai, is not basis for a new trial since the court already decided the question of agency, and the government presented more than enough evidence at trial to establish the agency relationship between Bhimani and

- 36 -

Om Sri Sai. In fact, Hassam testified that Bhimani was the General Manager and had broad authority to run the Howard Johnson. Bhimani also admitted that as General Manager he had authority and control in the Howard Johnson, such as hiring and firing. (Doc. 136-1 at 7). Thus, to the extent that the defendants now try to relitigate an issue the court has previously decided through their motion for new trial, such an issue is more appropriately a grounds for an appeal to the Third Circuit after the defendants are sentenced by the court.

In short, prior to trial the court reviewed the latest redacted version of Bhimani's statement submitted by the government, (Doc. 136-1), as well as the defendants' objections to it and the government's response, and made specific findings line-by-line its October 2, 2020 Memorandum.[7]

The court also discussed in great detail the Confrontation Clause, Bruton, Crawford, and the hearsay issues raised by the defendants with respect to Bhimani's statement. Nonetheless, the defendants now argue that their due process and confrontation rights were violated "by the prejudicial spillover resulting from the admission of overwhelming inflammatory

---

[7]The court also addressed the legal bases of the defendants' objections to Bhimani's statement, including the objections based on the Confrontation Clause, Bruton, Crawford and hearsay, as well as FRE 403.

evidence" against Bhimani based on Bhimani's admissions as well as "other evidence." (Doc. 190 at 22).

As the court previously explained, <u>Bruton</u> and <u>Crawford</u> pertain to testimonial statements by a non-testifying co-defendant that directly incriminate another defendant. "In <u>Bruton</u>, the Supreme Court held that the introduction of a non-testifying defendant's out-of-court statement, which directly implicated his co-defendant by name, violated the Confrontation Clause right of the co-defendant." <u>U.S. v. McLaughlin</u>, 2013 WL 996266, *5 (M.D. Pa. March 13, 2013) (citation omitted). Further, "the Supreme Court subsequent to <u>Bruton</u> clarified that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction and redaction of the co-defendant's statement." <u>Id</u>. at *3. "As set forth under <u>Bruton</u> and its progeny, and as subsequently interpreted by the Third Circuit, a <u>Bruton</u> violation can occur if a statement is admitted into evidence at trial that on its face incriminates the objecting defendant." <u>Id</u>. at *8.[8] All of these concerns were remedied in the court's October 2, 2020 Memorandum.

---

[8] "The United States Supreme Court has interpreted the Sixth Amendment to include the right to cross-examine witnesses. The Confrontation Clause bars admission of testimonial statements of a witness

Further, the defendants' reliance upon McLaughlin in their instant motion seeking a new trial is misplaced since the court directed that all of Bhimani's statements that in any way implicated Hassam in criminal activity and his statements that were incriminating against Hassam on their face were redacted. However, the court held that Bhimani's statements that implicated Om Sri Sai were admissible as agent statements. Indeed, as the government states, (Doc. 192 at 30), "[d]efendants point to no specific portion of [Bhimani's] interview video as presented at trial that ran afoul of *Bruton* or *Crawford*."

Also, as the government points out, (Doc. 192 at 27), "[o]ther evidence, such as non-codefendant witness testimony and physical evidence, cannot possibly run afoul of *Bruton* and *Crawford*."

Further, large portions of the government's evidence against Bhimani also directly incriminated Om Sri Sai. As the court in its October 2, 2020 Memorandum previously explained:

> "Because a corporation can act only through its employees, a statement by a corporate official such as [Bhimani] can certainly be considered an admission by a corporate defendant." United States v.

who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Alvardo v. Wingard, 2019 WL 6880912, *8 (E.D. Pa. Jan. 8, 2019) (internal quotations and citations omitted).

- 39 -

Brothers Constr. Co., 219 F.3d 300, 310–11 (4th Cir.), cert. denied, 531 U.S. 1037, 121 S.Ct. 628 (2000). "The corporation's agent need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." *Id.* at 311 (citation omitted). "Thus, this rule requires that when making an admission on behalf of the defendant, the declarant be both authorized and acting within the scope of employment." U.S. v. Riley, 621 F.3d 312, 338 (3d Cir. 2010). Mathis v. Monza, 2013 WL 1058867, *2 (W.D. Pa. March 14, 2013) ("For Rule 801(d)(2)(D) to apply, the statement must concern matters within the scope of the declarant's agency or employment.) (citing Riley, 621 F.3d at 338). "[B]eing a direct decision-maker, of course, constitutes strong proof that a statement was made within the scope of employment[.]" Riley, 621 F.3d at 338 (citation omitted).

Additionally, to the extent that the defendants now belatedly, and somewhat disingenuously, suggest that the court should have held separate trials in this case for Bhimani and Hassam, neither the government nor the defendants ever moved for severance, as indicated by the government. (*See* Doc. 192 at 27-28; Doc. 64 at 7 n. 5). In any event, the court's October 2, 2020 Memorandum granting, in part, and denying, in part, the government's motion *in limine* regarding Bhimani's statement cured any possible prejudicial spillover problems which may have arisen from conducting one joint trial in this case.

As such, defendants' alternate motion for a new trial will be denied in its entirety.

- 40 -

## IV.   CONCLUSION

Accordingly, the defendants' motion for judgment of acquittal under Rule 29, **(Doc. 189)**, will be **DENIED IN ITS ENTIRETY**, as discussed above. The defendants' alternate motion for a new trial under Rule 33, **(Doc. 189)**, will be **DENIED IN ITS ENTIRETY**, as discussed above. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 8, 2021**
17-324-04